IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| JACQUELINE D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil No. 21-3569 (RMB) <br><br> OPINION |

**APPEARANCES**

Kathryne Hemmings Pope
25 Hunter Street
P.O. Box 7
Woodbury, New Jersey 08096

    *On behalf of Plaintiff*

Corey Stephen Fazekas
Social Security Administration
300 Spring Garden Street, 6th Floor
Philadelphia, Pennsylvania 19123

    *On behalf of Defendant*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon an appeal filed by Plaintiff Jacqueline D. seeking judicial review of the final determination of the Commissioner of the Social Security Administration (the "Commissioner" and the "SSA,"

respectively), which denied Plaintiff's application for Social Security benefits. For the reasons set forth herein, the Court will affirm the decision of the Administrative Law Judge ("ALJ").

## I. PROCEDURAL HISTORY

On October 10, 2019, Plaintiff protectively filed an application for Social Security benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of disability beginning March 5, 2016. [R. at 12.] The claim was first denied on March 3, 2020, and again denied upon reconsideration on June 1, 2020. [*Id.*] On June 4, 2020, Plaintiff filed a written request for a hearing before an ALJ. [*Id.*] That hearing took place on August 13, 2020, via telephone. [*Id.*] Plaintiff was represented by Kathryne H. Pope, an attorney, at the hearing, at which the ALJ heard testimony from Plaintiff and impartial vocational expert Michael Kibler. [*Id.*]

On August 27, 2020, the ALJ issued a decision denying Plaintiff's claim for benefits. [R. at 12–37.] Plaintiff requested Appeals Council review of that decision on September 17, 2020. [R. at 161–64.] That Request was denied by the Appeals Council on January 4, 2021, rendering the ALJ's decision final. [R. at 1–6.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368, 372 (3d Cir. 2009).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Hess*, 931 F.3d at 208 n.10 (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i–v). The

claimant bears the burden of proof at steps one through four, whereas the Commissioner bears the burden of proof at step five. *Hess*, 931 F.3d at 201. Recently, the Third Circuit described the ALJ's role in the Commissioner's inquiry at each step of the analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [*Smith v. Comm'r of Soc. Sec.*], 631 F.3d [632, 634 (3d Cir. 2010)]. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert."

> *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff, who was born on May 27, 1972, was 45 years old on the alleged onset date and 48 years old at the time of her administrative hearing on August 13, 2020. [*See* R. at 12, 35.] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, meaning that she must establish disability on or before that date to be entitled to benefits. [*See* R. at 14.]

#### A. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in gainful activity during the relevant period of March 5, 2016, through December 31, 2017. [*Id.*]

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "post-trauma syndrome disorder ('PTSD'); anxiety disorder; depression disorder; degenerative disc disease (cervical and lumbar spines); obesity; and radiculopathy." [*Id.* (cleaned up).]

At step three, the ALJ then found that "[t]he claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526." [R. at 15–17.]

5

At step four, the ALJ found that, during the relevant period, Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: can frequently handle, finger and feel with the right hand (no limitations with the left hand); can occasionally climb ramps and stairs; can frequently stoop and crouch; can never work at unprotected heights; can never work with hazardous machinery; can work in no louder than loud noise; can perform simple, routine and repetitive tasks but cannot ever interact with the general public.

[R. at 17–35.] The ALJ also found that Plaintiff "was unable to perform any past relevant work." [R. at 35.]

At step five, the ALJ found that, during the relevant period "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." [R. at 35–36.] Specifically, the ALJ adopted the VE's testimony that Plaintiff could perform

> representative occupations such as: (i) cleaner, housekeeping (DOT Code 323.687-014, SVP 2, light exertional level, and 78 jobs in the national economy); (ii) bindery-machine feeder-offbearer (DOT Code 653.686-026, SVP 2, light exertional level, and 11,800 jobs in the national economy); and electrical accessory assembler (DOT Code 729.687-010, SVP 2, light exertional level, and 39,000 jobs in the national economy).

[R. at 36.] Therefore, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from March 5, 2016, the alleged onset date, through December 31, 2017, the date last insured." [*Id.*]

## IV.   DISCUSSION

Plaintiff raises two arguments in support of remanding this case. First, she argues that "[t]he ALJ failed to properly consider the evidence under SSR 16-3p." [Docket No. 10, at 17–20.] Second, she argues that "[t]he ALJ failed to properly consider the opinion of Dr. Lawrence Clinton," her psychiatrist, "in her decision." [*Id.* at 20–25.] The Court will address each argument in turn.

### A.   Plaintiff's Treatment History

Plaintiff's first argument is that the ALJ did not properly consider certain evidence under SSR 16-3p. [*Id.* at 17–20.] SSR 16-3p states that

> if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following:
>
> - An individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms.
>
> . . . .
> - An individual may not be able to afford treatment and may not have access to free or low-cost medical services.
>
> . . . .
>      . . . [W]e will consider and address reasons for not pursuing treatment that are pertinent to an individual's case.

SSR 16-3p.

Here, Plaintiff argues that the ALJ did not adequately apply the above standard when considering several pieces of evidence. [Docket No. 10, at 17–20.] First, the ALJ determined that Dr. Clinton's opinions were unpersuasive because, in part,

> during the relevant period, which spans from the claimant's alleged onset date of March 5, 2016 through December 31, 2017, the claimant only had, at most, seven appointments with Dr. Clinton. The seven appointments include an appointment on March 1, 2016, which is prior to the alleged onset date, and an appointment in August of 2017, which Dr. Clinton denies the claimant had.

[R. at 32.] Second, "[t]he ALJ cited to . . . Plaintiff's ability to have a relationship with one person, go shopping and travel to the beach on a handful of occasions" as support for denying Plaintiff's claim. [*Id.* at 19.] Third, Plaintiff argues, the ALJ improperly relied on Plaintiff's attempt to find work "as an indication of her ability to sustain work." [*Id.*]

Plaintiff contends that the appointments with Dr. Clinton were infrequent because Plaintiff could only afford them through workers' compensation and was therefore limited to those visits that were approved by the workers' compensation carrier. [*Id.* at 17–18.] Additionally, Plaintiff argues that she took other means of addressing her mental health, such as "limiting and structuring her activities in order to alleviate her mental stressors." [*Id.* at 18.] Finally, with respect to the frequency of her appointments with Dr. Clinton, Plaintiff argues that the ALJ's "fail[ure] to identify any aggressive treatment that was both appropriate and, most importantly in

8

this case, available to the Plaintiff given her treatment options through workers' compensation." [*Id.* (citing *Myles v. Astrue*, 582 F.3d 672, 677–78 (7th Cir. 2009)).]

The Court rejects Plaintiff's arguments. The ALJ's extremely detailed and meticulous decision carefully considered the record evidence and only made inferences and conclusions that were supported by substantial evidence.

With respect to the frequency of Plaintiff's appointments with Dr. Clinton, the ALJ scrupulously summarized Dr. Clinton's notes from all of Plaintiff's appointments with him during the relevant time period. [*See* R. at 20–27.] Her appointments became steadily less frequent in spite of the claimed severity of her symptoms; in fact, she evidently missed several appointments and at times only saw Dr. Clinton twice per year. [*See, e.g.*, *id.* at 26–27 (indicating one appointment in January 2017, the next in May 2017, and the next not until March 15, 2018).] It is appropriate for an ALJ "to draw an inference adverse to [Plaintiff] from the fact that [she] has not sought medical assistance to relieve [her] professed pain." *See Mason v. Shalala*, 994 F.2d 1058, 1068 (3d Cir. 1993) (citing *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986)). Moreover, as Defendant points out, there is no indication anywhere in the record that Plaintiff sought other resources that she could afford in place of Dr. Clinton.

The ALJ also implicitly rejected Plaintiff's argument that she "does not leave the house" as a means of "structuring her activities in order to alleviate her mental stressors"—which Plaintiff argues is one justification for not needing to see Dr. Clinton more frequently. [*See* Docket No. 10, at 18.] The ALJ noted evidence that

9

flatly contradicted Plaintiff's alleged confinement to her own house. [R. at 34.] Plaintiff also attempts to use this argument as evidence that the ALJ erroneously held Plaintiff's "attempt[s] to lead a normal, albeit limited, life" against her. [Docket No. 10, at 19.] However, it is clear from the ALJ's decision that the ALJ was simply weighing the evidence and found unreliable Plaintiff's claims "that her mental impairments generally prevented her from leaving her home" in light of the evidence that she was able to lead a relatively normal life outside of her house. [*See* R. at 34.]

Finally, the Court turns to Plaintiff's argument regarding the ALJ's consideration of her job search. The Court agrees with the Defendant's argument that it is appropriate for an ALJ to consider a claimant's job search insofar as it indicates an inconsistency with the claimant's assertion that she cannot work. *See Myers v. Barnhart*, 57 F. App'x 990, 997 (3d Cir. 2003) (citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (noting that "it [is] entirely proper for the ALJ to consider that [a claimant's] receipt of unemployment benefits was inconsistent with a claim of disability during the same period" given that a claimant must admit her ability to work in order to qualify for unemployment). Here, the ALJ properly considered Dr. Clinton's repeated assertions that Plaintiff would benefit from working and Plaintiff's seemingly extensive job search, which was limited in some instances by concerns about pay. [R. at 33.] In fact, Plaintiff evidently turned down multiple job offers during this time period for such reasons, despite her current claim of disability. [*Id.*] As the ALJ wrote, "The claimaint's inability to obtain employment *of her choice* does not render her disabled from working." [*Id.*]

Therefore, the Court rejects Plaintiff's first line of arguments that the ALJ did not properly consider certain evidence under SSR 16-3p. The ALJ's conclusions in that regard were supported by substantial evidence and were well within her purview.

### B. The ALJ's Consideration of Dr. Clinton's Opinion

Next, Plaintiff argues that "[t]he ALJ failed to properly consider the opinion of Dr. Clinton in her decision." [Docket No. 10, at 20–25.] The ALJ found Dr. Clinton's opinions "unpersuasive." [R. at 32.] Plaintiff argues that this determination was improper for various reasons. [Docket No. 10, at 20–25.] The Court disagrees. As noted above, the ALJ considered Dr. Clinton's opinion in great detail and gave several valid reasons for finding the opinion unpersuasive. [R. at 31–32.] They included inconsistencies in the record; Dr. Clinton's repeated encouragement that employment would help alleviate Plaintiff's symptoms; Plaintiff's limited visits with Dr. Clinton and lack of other mental health care; external factors unrelated to her mental health that were affecting Plaintiff; and the fact that Dr. Clinton filled out the questionnaire containing his opinions in 2020, more than two years *after* Plaintiff's alleged dates of disability, without specifying whether his analysis was confined to the relevant dates. [R. at 32.] The ALJ also properly disregarded Dr. Clinton's 2013 and 2018 documents stating that Plaintiff was totally disabled from work, as that letter was written regarding Plaintiff's lawsuit against her former employer and for her workers' compensation claim, respectively, and, in any event such "determination [is] reserved solely for the Commissioner." [R. at 31.]

In this matter, the ALJ's determination that Dr. Clinton's opinion was unpersuasive was supported by substantial evidence. As mentioned above, she meticulously considered all of Dr. Clinton's opinions and weighed them against the record evidence. Her decision to deem them unpersuasive was supported by substantial evidence and therefore cannot be the basis for remand.

## V.   CONCLUSION

For the reasons expressed above, the Court will affirm the ALJ's decision. An accompanying Order shall issue.

<u>April 26, 2022</u>              <u>s/Renée Marie Bumb</u>
Date                                 Renée Marie Bumb
                                           United States District Judge